**John DOE and Ann Smith Doe, Petitioners,**

v.

**Jane DOE, on behalf of her son, Jack Doe, Respondent.**

**No. 81–1631.**

United States Court of Appeals, Fourth Circuit.

Argued Aug. 6, 1981.

Decided Sept. 21, 1981.

David A. Melesco, Rocky Mount, Va., for petitioners.

Marcia Robinson Lowry, New York City, for respondent.

Before RUSSELL, WIDENER and HALL, Circuit Judges.

WIDENER, Circuit Judge:

John Doe and Ann Smith Doe petition this court to grant a writ of prohibition or mandamus prohibiting the District Court for the Western District of Virginia from exercising jurisdiction over a habeas corpus petition in the case of *Jane Doe, on behalf of her son, Jack Doe v. John Doe and Ann Smith Doe*, No. 80–0089(R). We find petitioners' contentions well taken.

John Doe and Jane Doe were married in June 1967, and that marriage produced a son, Jack Doe, in June 1971. The parties separated, with Jane Doe living in Ohio and entering into a lesbian relationship. That relationship continues to the present, and has even been marked by what Jane Doe calls a marriage ceremony. She states her lesbian relationship is permanent. John and Jane Doe were divorced in Virginia in 1975, with custody of Jack Doe later being awarded to his father, John Doe, the child upon the commencement of the separation having lived with his mother.

In 1975, John Doe married Ann Smith Doe. Thereafter Ann Smith Doe petitioned the Circuit Court of Franklin County, Virginia to adopt Jack Doe pursuant to Va. Code § 63.1–225.[1] Jane Doe contested the adoption proceeding. On March 5, 1979, Ann Smith Doe was allowed to adopt Jack Doe by order of the Circuit Court of Franklin County. Jane Doe's parental rights as to the child, Jack Doe, were necessarily terminated by that proceeding. Since the adoption, John Doe and his family have moved to South Carolina and are now residents of that state.

Jane Doe appealed that adoption order and a writ of error was granted by the Virginia Supreme Court on November 19, 1979. That case is awaiting argument on appeal.[1A]

On March 20, 1980, Jane Doe filed a habeas corpus petition in the District Court for the Western District of Virginia, alleging that the detention of Jack Doe was unlawful. She contends that Va.Code § 63.1–225 is unconstitutional on its face as being vague and overbroad because it provides for adoption without the parent's consent when the court finds that such consent "is withheld contrary to the best interest of the child"; is unconstitutional as applied to her because she has not been found to be an unfit mother; and that the state court's decision was constitutionally impermissible

1. Va.Code § 63.1–225 provides in pertinent part:

    A.  No petition for adoption shall be granted, except as hereinafter provided in this section, unless there be written consent [of the parents] to the proposed adoption filed with the petition....

       *     *     *     *     *     *

    C.  If after hearing evidence the court finds that the valid consent of any person or agency whose consent is hereinabove required is withheld contrary to the best interests of the child or is unobtainable, the court may grant the petition without such consent....

1A.  We are advised by Jane Doe's attorney that argument is now scheduled in the Virginia Supreme Court at its October 1981 term. This advice was received while the opinion was circulating.

because based upon the fact that she is a lesbian.

In February 1981, the district court stayed further action on the habeas petition pending exhaustion of state court remedies, since the matter was pending in the Virginia Supreme Court. On July 6, 1981, the district court ordered that Jane Doe be permitted to visit the child, Jack Doe, for two weeks in August 1981, at the home of Jane Doe's parents in Ohio. The district court stated that Jane Doe sought such preliminary relief to maintain the status quo pending exhaustion of state court remedies.

Petitioners raise several grounds in support of their petition for a writ of prohibition or mandamus, among them being that the district court is without jurisdiction under 28 U.S.C. § 2254 * to entertain a petition for habeas corpus regarding child custody between parents.

Six circuits have spoken to the issue of whether the extraordinary writ of habeas corpus is available to a parent to contest child custody.

The First Circuit held in *Sylvander v. New England Home for Little Wanderers*, 584 F.2d 1103 (1st Cir. 1978), that federal habeas corpus is not the proper vehicle for a parent to contest custody of its child. There, as here, the natural mother's parental rights were terminated by a state court order without her consent and without a finding that she was unfit, but based solely upon the child's best interests. The Massachusetts Supreme Court affirmed the lower state court's action. Sylvander then sought a federal writ of habeas corpus.[2] The district court rejected her claims.

The First Circuit affirmed on the ground that "child custody rulings by themselves are not sufficient to trigger a federal habeas remedy on behalf of a dissatisfied mother." Id. at 1113. In reaching that conclusion, the court relied upon the fact that the custody in this case is not the kind of custody traditionally recognized under habeas corpus because it is the rights of the mother

primarily that are being challenged and only incidentally the right of the child, the party in custody.

Like Jane Doe here, Sylvander sought to challenge by way of habeas corpus the constitutionality of the Massachusetts adoption statute on the grounds that it allowed the termination of parental rights without a showing of unfitness. The court denied the petition, noting that child welfare cases are different from other cases in which habeas corpus is a proper remedy.

The Third Circuit, sitting en banc in *Lehman v. Lycoming Co. Children's Services Agency*, 648 F.2d 135 (3d Cir. 1981), pet. for cert. filed, 50 L.W. 3002 (1981), agreed with the First Circuit's holding in an especially enlightening opinion on the background of the writ which we will not repeat here. Reversing a panel decision, that court likewise found that habeas corpus was unavailable in child custody cases. There, a lower state court of Pennsylvania involuntarily terminated Mrs. Lehman's parental rights at the instance of the Commonwealth. The Pennsylvania Supreme Court agreed and the United States Supreme Court denied certiorari. Mrs. Lehman then sought a writ of habeas corpus on the grounds that the pertinent adoption statute was unconstitutional on its face and as it applied to her, apparently two of the grounds asserted here. The district court dismissed the petition for lack of jurisdiction, and the Third Circuit affirmed.

In his plurality opinion, Judge Garth relied heavily upon the reasoning of *Sylvander* and found that the right sought to be protected was the mother's right to raise her children, not the children's liberty rights. The court concluded that "the 'custody' of a foster or adoptive parent over a child is simply not the type of custody that may be challenged through federal habeas." Id. at 142. "[C]ustody disputes of the nature addressed here and which essentially involve no more than the question of who shall raise a child to maturity, do not impli-

---

* See also 28 U.S.C. § 2241.

2. Sylvander also sought relief under 42 U.S.C. § 1983.

cate the federal interest in personal liberty sufficiently to warrant the extension of federal habeas corpus." Id. at 146. Judge Adams' plurality opinion in no way contradicts this language but goes further and finds neither jurisdiction nor standing present in that case. Chief Judge Seitz thought it error to exercise jurisdiction technically present under the statute.

The Sixth Circuit found habeas corpus relief to be inappropriate in *Huynh Thi Anh v. Levi*, 586 F.2d 625 (6th Cir. 1978), for reasons of comity and because the petitioner had not exhausted his state court remedies. That court treated non-exhaustion as jurisdictional. p. 633. In that case a grandmother sought custody of her grandchildren who were part of the Vietnamese Orphans Babylift.[3] The grandmother claimed that the children were being detained in violation of U. S. treaties, immigration laws, and the Constitution. The writ was sought after the children's foster parents had instituted adoption proceedings in a Michigan state court. The court found habeas corpus to be improper, noting that such disputes have traditionally been thought to be within the province of state courts. The court went further to emphasize that the issues sought to be raised through habeas were the same issues before the state court and that experience and a sense of fairness indicated that the federal courts were not as well equipped as were state courts to deal with the problem.

Likewise, the Eighth Circuit has found that habeas corpus was not appropriate in *Syrovatka v. Erlich*, 608 F.2d 307 (8th Cir. 1979), cert. den. 446 U.S. 935, 100 S.Ct. 2152, 64 L.Ed.2d 788 (1980). The court there found that since Nebraska law did not permit a challenge to adoption after two years that habeas would not lie, and that the best interests of the children were not served by the late collateral attack by way of habeas corpus.

The Ninth Circuit has found habeas corpus to be appropriate in some circumstances involving child custody, but not in others,

while the Fifth Circuit has held it to be an appropriate remedy.

The Ninth Circuit found that habeas did lie in *Nguyen Da Yen v. Kissinger*, 528 F.2d 1194 (9th Cir. 1975). There, as in *Huynh Thi Anh*, the children were part of the Vietnamese Orphan Babylift. Those children were brought to the United States by federal government action and were here on a parole status. The court noted that, while most child custody conflicts would not involve a constitutional violation, because of the government's involvement in the case at hand habeas jurisdiction was appropriate. Later, the same court refused to allow habeas corpus as a remedy in *Tree Top v. Smith*, 577 F.2d 519 (9th Cir. 1978). There, a mother voluntarily turned over custody of her child to a couple, who later sought to adopt the child. The mother sought a writ of habeas corpus in the federal district court but was unsuccessful. The Ninth Circuit affirmed, noting that special circumstances were required to overcome "the long standing policy of the federal courts to refrain from interfering in state court domestic relation disputes." Id. at 521. It affirmed the dismissal of the petition on the alternate grounds of abstention and *res judicata* absent unique circumstances which did not exist.

In *Davis v. Page*, 640 F.2d 599 (5th Cir. 1981), pet. for cert. filed sub nom *Chastain v. Davis*, 49 L.W. 3883 (1981), a majority of the Fifth Circuit, sitting en banc, allowed the issuance of a writ of habeas corpus to stand where a mother's children had been placed in the state's care following a hearing where she was not represented by counsel. Habeas jurisdiction was sustained on the ground that the child involved was held pursuant to a judgment of a state court. A previous holding to the same effect was in *Rowell v. Oesterle*, 626 F.2d 437 (5th Cir. 1980), a suit between private parties.

■ Thus, *Sylvander, Tree Top, Syrovatka*, and perhaps *Levi*, in suits between private parties, have held that federal habeas

---

3. Orphans were airlifted from South Vietnam just prior to the fall of Saigon in 1975. Some

2700 of these, however, turned out not to be qualifying orphans.

corpus is not an available remedy where the object of the suit is to determine child custody. The reasons have varied as we have set forth. The Fifth Circuit alone in *Rowell* has held that it is. The Ninth Circuit in *Kissinger* has held that federal habeas is available where the federal government is involved, and the Fifth Circuit in *Davis* has held the same where a state government was involved, although in candor we must say that *Davis* did not base its decision on that fact. But, in *Lehman* where the state was involved and perhaps in *Levi*, the courts held that federal habeas was not available although the government was admittedly involved. By far the greater number, then, of the decisions of the courts of appeals on the subject agree with our opinion that federal habeas corpus is unavailable in suits between private parties where the object of the suit is to ascertain the custody of a child, or the right to rear the child, as some of the cases have said.

The Supreme Court has long held that the federal courts have no jurisdiction to hear domestic relations matters, although, admittedly, it has not addressed the precise question at hand. As early as 1858 the Court noted that "[w]e disclaim altogether any jurisdiction in the courts of the United States upon the subject of divorce." *Barber v. Barber*, 62 U.S. (21 How.) 582, 584, 16 L.Ed. 226. In 1890, the Court again noted that "the whole subject of the domestic relations of a husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States." *Ex Parte Burrus*, 136 U.S. 586, 594, 10 S.Ct. 850, 853, 34 L.Ed. 500.

An explicit holding of that Court that there was no jurisdiction in the federal courts came in *State of Ohio ex rel. Popovici v. Agler*, 280 U.S. 379, 50 S.Ct. 154, 74 L.Ed. 489 (1930). In that case the wife of the Vice-Consul of Romania sought a divorce in a state court in Ohio. The Vice-Consul objected to the jurisdiction of the Ohio court on the ground that Art. 111, § 2

of the Constitution and 28 U.S.C. § 1351 vested exclusive original jurisdiction in the federal courts for matters involving foreign consuls. The state court rejected that argument. The Vice-Consul then sought a writ of prohibition from the Supreme Court of Ohio, which denied it. The Supreme Court of the United States then granted certiorari to the Ohio Supreme Court's denial of prohibition, and held that jurisdiction was proper in the state court because the federal court was without jurisdiction. Jurisdiction was lacking in the federal courts because "the domestic relations of husband and wife and parent and child were reserved to the States." Id. at 384. The Court noted that it "has been unquestioned for three-quarters of a century that the Courts of the United States have no jurisdiction over divorce." p. 383.

This Court has consistently acknowledged and upheld this lack of federal court jurisdiction in the area of domestic relations. In *Cole v. Cole*, 633 F.2d 1083 (4th Cir. 1980), we noted that federal courts must be alert to keep genuinely domestic matters such as "child custody," p. 1088, out of the federal courts. Likewise, in *Wilkins v. Rogers*, 581 F.2d 399 (4th Cir. 1978), we held that no jurisdiction lies in the federal courts over suits involving domestic relations. *Gullo v. Hirst*, 332 F.2d 178 (4th Cir. 1964), also upholds this principle.[4]

In conclusion, it is our opinion that, while jurisdiction may arguably exist, the child being held by his adoptive mother pursuant to the judgment of a state court, see 28 U.S.C. § 2254, the district court clearly erred by exercising any jurisdiction it might have had and in not dismissing the case for want of jurisdiction.

Every dictum of the Supreme Court points in this direction, as do our own. Of the courts of appeals which have considered the question at hand only one has taken the opposite position on like facts, the other decisions being consistent with our own.

---

4. See, generally, 13 Wright, Miller and Cooper, *Fed'l Prac. & Proc.* § 3609.

**106**

Reason[5] and precedent both dictate that in this, a purely custodial case between private parties, that the federal courts not intervene. The policy that the federal courts not entertain the case is so strong that any exercise of jurisdiction by the district court would amount to an exercise of power it does not possess. Prohibition lies for the improper exercise of jurisdiction which may otherwise exist. *Ex Parte Peru*, 318 U.S. 578, 63 S.Ct. 793, 87 L.Ed. 1014 (1943).

Being confident that the district court will dismiss the petition for habeas corpus for want of jurisdiction, the writ will not issue absent further application from John and Ann Smith Doe.

---

5. Reasons abound which we subscribe to for federal courts not to take habeas jurisdiction in custody disputes between man and wife, or a man and his former wife as is the case here. Among them are that the best interest of the child requires a definitive end to the litigation as quickly as may be. *Lehman*, p. 143–44, 155; *Sylvander*, p. 1112; see also *Syrovatka*, p. 311. That goal is certainly not realized by permitting collateral habeas attacks on state court judgments. Federal habeas corpus carrying with it the principle, while it may be appropriate in prisoners' cases, of the non-applicability of *res judicata* may result in an endless chain of litigation over child custody. This is illustrated by this case where a definitive adjudication of the validity of the Virginia statute involved may be had by Jane Doe as a matter of right by appeal from any adverse determination of the state court under 28 U.S.C. § 1257(2). *Hicks v. Miranda*, 422 U.S. 332, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975). Thus, the claim on argument of Jane Doe that she had rather have a definitive decision on the merits by the Virginia court than a decision of a federal court has a hollow sound when it is remembered she filed her petition for habeas corpus in the federal court shortly after the writ of error was granted by the Virginia Supreme Court, and that a review of any decision of ours holding the Virginia statute valid might only be reviewed by certiorari under 28 U.S.C. § 1254(1), while a Virginia decision upholding the validity of the statute would be decided on appeal under § 1257(2) as we have before pointed out. We reason with *Lehman*, p. 144, that this is a case in which parties fighting over the right to raise a child will fight until there is no other forum in which they may do so.

We also think, agreeably with the reasoning of the *Levi* court, p. 634, that experience and a sense of justice and fairness indicate that the federal courts are not nearly as well equipped as are local state courts to deal with the problems of child custody.

We feel especially that any interference of the district court by way of habeas in the ongoing state proceeding presently pending in the Virginia Supreme Court, deciding the very questions presented to the federal habeas court, is an exercise of power that the federal court does not possess, although, as we have noted, it may technically have jurisdiction under 28 U.S.C. § 2254.